IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

SARA MAUK, Individually and as
Personal Representative on Behalf of the
Wrongful Death Beneficiaries of ERIC HEINZE                    PLAINTIFF

v.                                           CIVIL ACTION NO.  5:18-cv-68-DCB-MTP

MANAGEMENT & TRAINING CORPORATION
and JOHN AND JANE DOES 1-100                                    DEFENDANTS

## COMPLAINT

*Jury Trial Demanded*

1.  This complaint is brought by Sara Mauk (hereinafter, "Plaintiff"), individually and as Personal Representative on behalf of the wrongful death beneficiaries of Eric Heinze (hereinafter, "Decedent"), by and through undersigned counsel, against Management & Training Corporation (hereinafter, "Defendants") and John and Jane Does 1-100.

## JURISDICTION AND VENUE

2.  Subject Matter Jurisdiction is appropriate in federal court since a federal question is raised pursuant to 42 U.S.C. 1983 as well as the 8th and 14th Amendments to the United States Constitution. Subject Matter Jurisdiction is also appropriate based upon diversity of citizenship as the Plaintiff and Defendant are citizens of different states and the claim is in excess of $75,000.00. The Court also has pendent jurisdiction over the Plaintiff's state law causes of action.

3.  Venue is appropriate in this Court as all acts and/or omissions occurred in Wilkinson County, Mississippi, which is located within the Southern District of the United States District Court, Western Division.

## PARTIES

4.  Plaintiff, Sara Mauk is currently an adult resident citizen of Plant City, Florida.

She is the Decedent's natural mother. The Plaintiff was appointed as Administratrix of the Estate of Eric Heinze on May 2, 2018. A copy of the order is attached as Exhibit 1. Plaintiff, as Personal Representative, brings this action pursuant to Mississippi Code Ann. § 11-7-13 (1972), the Wrongful Death Statute.[1]

5.  Decedent was, at all times material to this Complaint, an adult incarcerated at the Wilkinson County Correctional Facility (hereinafter, "WCCF"), located in Woodville, Mississippi.  Substantial acts, omissions, and events that caused the Decedent's death took place in Wilkinson County, Mississippi.

6.  Defendant, Management & Training Corporation (hereinafter, "MTC"), a national for-profit prison operator incorporated and existing in the State of Utah, was given a contract by the Mississippi Department of Corrections ("MDOC") in July 2013 for the management and oversight of the prison's daily operations, under which it has the responsibility for providing humane care and treatment consistent with all constitutional and ACA standards.  MTC's 5,545 employee corrections division operates twenty-four (24) correctional facilities throughout the United States, with seventeen (17) contracts with state correctional departments and seven (7) with federal correctional agencies.  The acts, omissions and events giving rise to Plaintiff's complaint occurred under MTC's management.  MTC's principal place of business is located at 500 North Marketplace Drive, Centerville, Utah 84014, and is subject to the in personam jurisdiction of the Court by service of process upon its appointed registered agent, CT Corporation System, located at 645 Lakeland East Drive, Suite 101, Flowood, Rankin County, Mississippi 39232.

7.  The Plaintiff is ignorant as to the identities of Defendants John and Jane Does 1-100, who are unknown MTC officers, employees, agents, and or servants.  Plaintiffs will amend

---

[1] The heirship determination has not yet been made by the Chancery Court.

this Complaint to allege their true names and allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages, as alleged herein, were proximately caused by their conduct. Plaintiff, upon information and belief, asserts that the Doe Defendants were the officers, agents, servants, and employees of the Defendant herein, and were acting with the permission and consent within the course and scope of said agency and employment.

## FACTS

8. At the time of his death the Decedent was incarcerated at WCCF. He was serving a 20 year prison sentence for armed robbery and burglary/larceny of an unoccupied dwelling. The Decedent had been incarcerated since 2002. On the date he was killed, the Decedent was housed in V Pod, cell 103.

9. James Long ("Long") was also incarcerated at WCCF. Long was a former gang member belonging to the security threat group ("STG") Simon City Royals. Long was transferred to V Pod and housed with the Decedent. According to Long, he began receiving threats from other gang members on V Pod. Long and the Decedent attempted to resolve their situation without resorting to violence. However, three days before killing the Decedent, Long was using a cell phone belonging to a gang member and the phone stopped working. The gang member ordered Long to pay for the phone but Long could not come up with the money. As a result, the Decedent was ordered to "take care of" Long for not paying for the phone. Long advised MTC officials that the Decedent was an active member of the Simon City Royals and the Decedent was ordered to get Long "out of V Pod" by other gang members. Long, fearing for his safety, told MTC staff members about the threats and also had his fiancé, Leah Beaty, contact MTC officials to get him moved. Despite having subjective awareness about these threats, MTC officials failed to move Long from the Decedent's cell.

10. Because Long had renounced his gang affiliation and because the Decedent was still an active gang member, the two should have never been housed together. Sound correctional practice required MTC officials to house Long and the Decedent separately. MDOC policy also required MTC to house Long and the Decedent separately. MTC's employees acted negligently, recklessly and with deliberate indifference by failing to remove Long from the Decedent's cell.

11. Due to the lack of institutional control by MTC, contraband freely flows into WCCF. Underpaid guards routinely assist gang members by bringing in cell phones, drugs, and other contraband. MTC's officials are aware of this problem and have been since it took over the day to day operations at WCCF. However, MTC continues to hire unqualified employees who are easily compromised by inmates. MTC continues to inadequately supervise its employees allowing the free flow of contraband to continue. Such actions and inactions by MTC are negligent, reckless and deliberately indifferent.

12. Due to MTC officials failure to curtail the contraband flow, Long was able to obtain a "spice" cigarette from inmate Jackie Clark. Upon information and belief, the drugs were smuggled into WCCF by MTC employees. Clark indicated that Long was frequently under the influence of drugs, specifically "spice" and "ice". According to Clark, Long would become crazy during these episodes and was often seen running around the zone. Clark stated that Long had been high on February 16 and 17, 2017. On February 17, 2017 Clark gave Long a spice cigarette. Long was supposed to pay Clark back by giving him a food tray in return.

13. On the morning of February 18, 2017 Long and the Decedent were overhead loudly arguing in their cell. The argument was loud enough for Clark to hear. Clark stated that Long and the Decedent had been arguing for "some time" prior to the actual physical confrontation. Ultimately, Long stabbed the Decedent twenty times (20) with homemade knives, also known as shanks. Shanks are an extremely common at WCCF and easily available to

inmates which contribute to the atmosphere of violence in the prison. MTC policymakers and officials are well aware of this yet fail to implement policies and procedures to eliminate the shanks and/or continue to understaff its prison with unqualified and untrained guards.

14. MTC typically understaffs its prisons. February 18, 2017 was no exception. On that date, MTC only had one security officer, Sgt. Jontelle Davis, assigned as the floor officer for both V and W Pods. Sgt. Davis, a female, was in charge of supervising dozens of violent male offenders. On the date in question, Sgt. Davis utilized three inmates ("orderlies") to help her pass out the food trays. These orderlies were housed in Cells 109, 205, and 210. When the inmates began handing out the food trays, Sgt. Davis left V Pod and went to W Pod to begin the feeding process. As a result, V Pod was not supervised during this time in violation of both MDOC and MTC policy. While Sgt. Davis was on W Pod, she heard a noise coming from V Pod. Sgt. Davis then went back to V Pod and heard screaming coming from Cell 103. Instead of immediately going to Cell 103 or at least calling for assistance, Sgt. Davis retrieved keys from the tower and locked down all three of the orderlies in their respective cells. After completing this task, Sgt. Davis finally reached cell 103 but Long had already finished his brutal attack on the Decedent. Davis called in the incident at approximately 10:46 a.m. The Decedent had a faint pulse when the security guards and medical personnel checked on him but he died at 11:01 a.m. MTC employees failed to intervene the loud argument and despite knowing that Long and the Decedent had prior issues. Instead, Sgt. Davis left V Pod unsupervised and continued to hand out food trays. Sgt. Davis' actions were negligent, grossly negligent and/or deliberately indifferent.

15. Long attempted to claim self-defense but he was indicted on manslaughter and plead guilty to that charge in June 2018. Long received a twenty (20) year sentence.

## CONDITIONS AT WCCF

16.     For years prior to the attack upon the Decedent which is the subject of this lawsuit, WCCF was besieged with inmate on inmate violence and rampant contraband. The gang population was so out of control that gang members essentially controlled the prison. Surveillance video exists showing prisoners moving around the prison at all hours of the night on numerous occasions when they were required to be locked down. MTC employees simply turned a blind eye to such actions, either because they are being paid to "look the other way" or simply do not care. WCCF Guards and other staff members assist gang members by bringing in contraband. In return, gang members would pay the WCCF employees via "green dot cards". In addition, some WCCF employees were affiliated with gang members and afforded them favorable treatment and even aided and abetted the gang members in their illicit behavior. Gang members were selling drugs, cell phones and other contraband with the assistance and/or approval of MTC employees. The introduction of this contraband into the prison contributed to the atmosphere of violence in existence at the prison.

17.     It is well documented that cell doors in most all of the units at the facility can easily be "rigged" to remain unlocked when shut—if the locks are operational in the first place—allowing inmates to leave their cells at any time and to enter the cells of others, resulting in many assaults. There have been numerous incident reports regarding assaults whereby inmates escaped or entered other cells through "rigged," or non-operational doors. In order to secure the inmates in their cells, MTC had to retrofit each cell door with a lock which can only be opened with a key. During emergency situations, such as when Long attacked the Decedent, the security officers must retrieve the cell keys in order to open the cell doors. This wastes valuable time when there is a life or death situation.

18. Weapons, such as homemade knives, were readily available at WCCF. Prisoners would utilize materials in the prison or get material smuggled in from guards. Some prisoners had homemade knives which were the size of swords. MTC failed to implement policies and procedures which would curtail the availability of these weapons. In a previous case against MTC it was revealed that gang members at WCCF recruited female guards to apply for jobs at the prison so that they could bring in contraband. MTC officials were aware of this fact. Monthly MDOC Compliance Reports reveal a vast array of contraband which is confiscated on a monthly basis. Of particular note are the weapons which are confiscated.

19. MTC officials and employees were aware of the prevalence of weapons at the prison. Guards who were being paid by gang members simply looked the other way. Others did not care or did not report the incidents due to the fear of gang retaliation. Regardless, MTC officials failed to take proper precautions and safety measures to curtail weapons inside the prison.

20. Upon information and belief, MTC officials failed to conduct enough shakedowns, and when shakedowns were done, the guards would either ignore contraband or simply not report it due to the fact they were being paid by gang members. Such actions and inactions contributed to the incident in which the Decedent died.

21. In order to deal with gangs in prison, sound correctional policy mandates that prison officials institute programs. Prison officials label gangs as "Security Threat Groups" ("STG's"). Such STG programs involve the prevention, identification, and management of gangs in prison. Upon information and belief, MTC has failed to institute any program to deal with the gang situation which exists at WCCF or has applied such measures with negligence, gross negligence and/or deliberate indifference. Specifically, MTC should have never housed James Long in the same cell as the Decedent. Long was a former gang member who had

renounced his gang affiliation. Inmates who renounce their gang affiliation become targets of other STG's. MTC officials were aware that Long had been threatened by STG members and knew that the Decedent was pressured by those STG members to "take care' of Long. Despite this subjective knowledge, MTC failed to move Long out of the Decedent's cell. Such failures led to the Decedent's death.

22. MTC was understaffed on the day the Decedent was attacked. MTC has a pattern and/or practice of understaffing at WCCF. The guards who are on duty are also inadequately trained and/or supervised to handle the prison population which exists at WCCF. MTC's actions and inactions were negligent, grossly negligent, and/or deliberately indifferent to the safety and well- being of the Decedent.

23. WCCF is so violent that it is known as "The Killing Fields" by the some of the inmates. Inmate on inmate violence is common place. Despite such conditions, MTC inadequately staffs the prison with enough security officers. Further, the security officers who are working are inadequately trained and/or supervised. As such, inmates live in constant fear of being attacked. The Decedent's death was not only foreseeable it was inevitable.

24. WCCF is a "direct supervision" prison meaning that the inmates must have constant supervision from MTC employees. MTC has allegedly trained its employees on direct supervision polices yet MTC constantly understaffs WCCF making direct supervision impossible. Specifically on the date the Decedent was killed there was only one guard assigned to cover V and W Pods. This practice and policy of understaffing is negligent, grossly negligent and deliberately indifferent to the Constitutional rights of the inmates, specifically the Decedent.

25. MTC has been sued numerous times for similar conduct as alleged in this

complaint. Undersigned counsel has personally filed three (3) suits.[2] There have been many more inmate on inmate attacks prior to the Decedent's death which did not result in a lawsuit but which placed MTC and its policymakers on notice about the violent atmosphere existing at WCCF and the staff corruption which causes and/or contributes to this. Despite this knowledge, MTC's policymakers refuse to enforce policies and procedures to control and/or reduce inmate on inmate violence. Such actions by MTC's policymakers are negligent, grossly negligent and/or deliberately indifferent.

## § 1983 CAUSES OF ACTION

### 1. Unconstitutional conditions of confinement, failure to train, supervise, staff and discipline

26.     MTC is treated as a "municipality" for the purposes of complaints brought pursuant to 42 U.S.C. §1983. MTC can be held liable for the Decedent's death if there exists a policy or custom which caused a constitutional deprivation which can be attributed to MTC's policymakers. The 5th Circuit has defined a "policy or custom" as ["a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or [a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." *Bennet v. City of Slidell*, 735 F.2d 861, 862 (5th Cir 1984).

---

[2] List *Kendrick Walker v. Management & Training Corporation*, In the United States District Court for the Southern District of Mississippi, Western Division, Civil Action No. 5:14-cv-98; *Jonsha Bell v. Management & Training Corporation*, In the United States District Court for the Southern District of Mississippi, Western Division, Civil Action No. 5:16-cv-39; and *Jose Hernandez v. Management & Training Corporation*, In the United States District Court for the Southern District of Mississippi, Western Division, Civil Action No. 5:16-cv-57 cases here.

27. MTC's policymakers, including the Warden, Deputy Warden and Doe Defendants 1-100, have established customs, policies and practices which created unconstitutional conditions of confinement, Defendants MTC and Doe Defendants 1-100 violated clearly established constitutional rights of the Decedent, including but not limited to:

    a) Cruel and unusual punishment under the Eighth and Fourteenth Amendments;

    b) Decedent's right not to be deprived of liberty without due process of law;

    c) Decedent's right to be safe and protected from injuries while in Defendants' custody;

    d) Decedent's right to be protected by the prison officials and guards while under their control; and

    e) Decedent's right to be free from excessive and unreasonable force.

28. As a direct and foreseeable result of Defendants' actions, Decedent suffered a brutal attack and died. Prior to his death, the Decedent suffered severe physical injuries, emotional distress, mental anguish, as well as pain and suffering.

29. Defendant MTC, by and through Doe Defendants 1-100 in their individual and official capacities, established customs, policies and practices which directly and proximately caused the deprivation of the Decedent's constitutional rights as alleged herein. Defendant and the Doe Defendants were deliberately indifferent to the safety of the Decedent and other WCCF inmates. These policies created unconstitutional conditions of confinement.

30. Such unwritten policies, customs and practices include but are not limited to the following:

    a. Inadequate and improper training, supervision and discipline of WCCF corrections officers;

    b. Inadequate and improper procedures and practices in screening, hiring, training, supervising and disciplining officers who have improper relationships with inmates, specifically gang members

       and who routinely bring in contraband to those inmates creating a dangerous prison environment;

c. Inadequate and improper procedures, policies and practices for investigating improper activities by WCCF correctional officers either through offender complaints of misconduct or through internally-initiated complaints or investigations;

d. Inadequate or improper procedures, policies and practices for identifying and taking appropriate action against WCCF correctional officers who are in need of re-training, corrective measure, reassignment, or other non-disciplinary actions, through a positive or early warning system designed to prevent such conduct;

e. Failing to enforce policies and procedures with regards to the management and control of Security Threat Groups in violation of MDOC policy;

f. Failing to adequately staff WCCF with trained and qualified guards and allowing the prison to be understaffed leading to an increase in inmate on inmate assaults and death;

g. Housing gang members with inmates who have renounced their gang affiliation;

h. Failing to follow policies and procedures to eliminate and/or control the flow of contraband, including but not limited to drugs and shanks, in the prison leading to an increase in inmate on inmate violence;

i. Failing to enforce the "direct supervision" of inmates by guards which leads to an increase of inmate on inmate violence;

j. Failing to enforce the policy requiring guards to make security rounds to check on inmates which also leads to an increase of inmate on inmate violence.

31. All the actions by MTC, its policymakers, and Doe Defendants 1-100 were done with deliberate indifference to the constitutional rights of WCCF inmates, specifically the Decedent. and caused and/or contributed to his death.

**2.** **Ratification**

32. MTC, its policymakers and Doe Defendants 1-100 were advised about the incident involving Long and the Decedent. MTC, by and through its policymakers, ignored evidence of widespread disregard of policies and procedures intended for the protection of inmates including the decedent, and systemic deficiencies that violated the Decedent's constitutional rights. Based on information and belief, not one officer, supervisor, or any other person was disciplined, considered for discipline, or even retrained on policies intended for the protection of inmates. Instead, the policymakers approved the actions of the jailers and therefore ratified those actions.

33. Through these acts and omissions of ratification, MTC's policymakers were deliberately indifferent to the Decedent's constitutional rights as set forth herein. A plaintiff can establish a municipal liability claim by showing that a final municipal policymaker approved an investigation that was "so inadequate as to constitute a ratification" of the misconduct. *Wright v. City of Canton*, 138 F. Supp.2d 955, 966 (N.D. Ohio 2001). "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). An isolated decision by a municipal official that is not intended to control future decisions can nonetheless give rise to municipal liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).

34. The ratification caused Decedent's death and damages in whole or in part as set herein.

## State Court Cases of Action

**1.  Premises Liability Claim**

35. The Decedent was an invitee and MTC was at all times material a landowner as contemplated by Mississippi law. The Decedent was a member of a class of persons for whom

the jail was specifically designed and intended as a place of housing, "was a member of a specific branch of the public for whom the property was required to be maintained." *Carson v. Corr. Corp. of Am.*, No. 10-CV-01329-REB-BNB, 2011 WL 1656509, at *3 (D. Colo. May 3, 2011). The *Carson* Court held that a prisoner was an invitee under the Colorado Premises Liability Act. Other jurisdictions have similarly held that prisoners are invitees. *See Wilkerson v. United States,* 2010 WL 1462542 at *5 (M.D. Pa. April 9, 2010) (citing *Graf v. County of Northampton,* 654 A.2d 131, 133–34 (Pa.Commw.Ct.1995)) (construing Pennsylvania law); *Schwensow v. United States,* 2010 WL 1064062 at *2 (E.D.Mich. Feb. 16, 2010) (construing Michigan law) (mag. judge op.), *adopted,* 2010 WL 1064006 (E.D.Mich. March 22, 2010).

36. MTC had a duty to prevent the Decedent from suffering injuries as a result of dangers of which it knew or with the exercise of reasonable care should have known. MTC knew or should have known that housing Long with the Decedent was improper due to Long renouncing his gang affiliation. Long had alerted MTC officials that he was being threatened and needed to be moved away from the Decedent. Despite this known danger, MTC officials failed to move Long out of the Decedent's cell which led to the fatal argument.

37. MTC knew or should have known that it failed to enact or implement policies and procedures to protect inmates, including the Decedent, and/or failed to adequately train and supervise employees to protect the Decedent. Security guards failed to supervise inmates, failed to conduct rounds for security and safety and failed to intervene to prevent inmate on inmate violence.

38. All of this conduct is an unreasonable failure to exercise reasonable care to protect against dangers of which MTC knew or should have known. These violations directly caused, in whole or in part, the Decedent to die.

   2. **Negligent and/or grossly negligen hiring, training and supervision**

39. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 38 hereinabove.

40. Plaintiff alleges Defendant MTC negligently, or grossly negligently, hired, supervised, and retained its employees, inter alia, by a) failing to care for and ensure the Decedent's safety while at WCCF; b) failing to properly train, supervise, discipline, retain, hire, and/or discharge its employees agents, and/or representatives; and c) were otherwise negligent or grossly negligent in their care and treatment of the Decedent, and as a direct and proximate result, the Decedent sustained the harms alleged herein.

### 3. Respondent Superior/Vicarious Liability

41. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 40 34hereinabove.

42. Defendants MTC, Sgt. Jontelle Davis, and other unknown correctional officers (Does 1-100) acted with negligence, gross negligence, and/or intentionally allowed or failed to prevent the Decedent's assault and death on February 18, 2017. At all times relevant, each Defendant owed a duty to the Decedent to ensure his safety, and the Defendants breached this duty. The actions and inactions of Defendant MTC, Sgt. Davis and/or other unknown MTC correctional officers led directly to the injuries and death suffered by the Decedent. Defendant MTC, as the employer of Sgt. Davis and the other Defendant John and Jane Does 1-100's employees, is liable for their actions which were undertaken during the course and scope of their employment with Defendant MTC.

43. Defendant MTC is also responsible for the actions and/or inactions alleged herein against Sgt. Davis and Defendant John and Jane Does 1-100 which caused the damages suffered by the Plaintiff. Such actions and/or inactions by said individual Defendants were committed within the course and scope of their employment with Defendant MTC.

**PUNITIVE DAMAGES**

44. The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 43 hereinabove.

45. The Defendant MTC, its policymakers and Doe Defendants 1-100 have acted in complete disregard for the safety of the Decedent by acting in a grossly negligent manner as previously described herein. The actions of the Defendants warrant punitive damages.

46. The Defendants' actions exhibited gross negligence and direct disregard of the safety of the Decedent. Punitive damages should be awarded against the Defendants. Defendants' tortuous actions have caused the Decedent bodily injures, emotional distress, mental anguish, and ultimately his life.

**PRAYER FOR RELIEF**

The Plaintiff requests a jury trial and seeks the following relief:

A. Compensatory damages of, from and against the Defendants, each and severally, in amount to be determined by this Court.

B. Punitive damages of, from and against the Defendants, in an amount to be determined by this Court.

C. Reasonable attorney's fees and all costs of this court.

D. Pre and post judgment interest.

E. Such other general and special relief as appears reasonable and just in this cause.

RESPECTFULLY SUBMITTED, THIS the 26th day of June, 2018.

SARA MAUK, PLAINTIFF

BY:   /s/ Charles R. Mullins
       CHARLES R. MULLINS

OF COUNSEL:

CHARLES R. MULLINS (MB# 9821)
MERRIDA (BUDDY) COXWELL (MB# 7782)
COXWELL & ASSOCIATES, PLLC
Post Office Box 1337
Jackson, Mississippi 39215-1337
Telephone: (601) 948-1600
Facsimile: (601) 948-1600
chuckm@coxwelllaw.com
merridac@coxwelllaw.com
*Attorneys for Plaintiff*